**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

ROBERT BUCHANAN BOYD,

Plaintiff,

v. No. 2:25-cv-1300 DLM

FRANK BISIGNANO,
Commissioner of Social Security,

Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** is before the Court on Plaintiff Robert Buchanan Boyd's Motion to Reverse or Remand to Administrative Agency Decision, with Memorandum in Support. (Doc. 17.) Having considered the record, submissions of counsel, and relevant law, the Court **DENIES** the motion.

## I. Procedural History

On August 7, 2023, Boyd filed an application with the Social Security Administration for a period of disability insurance benefits (DIB) and Supplemental Security Income benefits (SSI) under Titles II and XVI of the Social Security Act (SSA). (Administrative Record[1] (AR) at 73, 219–23.) Boyd alleged a disability onset date of February 9, 2022. (*Id.*) Disability Determination Services (DDS) determined that Boyd was not disabled initially and on reconsideration. (*Id.* at 118–22, 127–33.) Boyd requested a hearing before an Administrative Law Judge (ALJ) to challenge the decision. (*Id.* at 140–41.)

Both Boyd and a vocational expert (VE) testified during the *de novo* hearing. (*See id.* at

[1] Document 12 contains the sealed Administrative Record. (Doc. 12.) The Court cites the Administrative Record's internal pagination, rather than the CM/ECF document number and page.

45–70.) ALJ Robert Burdette issued an unfavorable decision on July 16, 2025. (*Id.* at 26–38.) Boyd submitted a Request for Review of Hearing Decision/Order to the Appeals Council (*id.* at 216–18), which the Council ultimately denied on October 29, 2025 (*id.* at 1–3). Consequently, the ALJ's decision became the final decision of the Commissioner. *See Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003).

## II. The Sequential Evaluation Process and the ALJ's Findings

"The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a); *see also* 42 U.S.C. § 423(d)(1)(A). In determining whether a claimant is eligible for disability benefits, the Commissioner follows a sequential evaluation process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009).

The claimant has the burden at the first four steps of the process to show: (1) he is not "doing substantial gainful activity"; (2) he has a severe impairment or combination of impairments that has lasted or is expected to last for at least one year; and (3) his impairments meet or equal one of the listings in Appendix 1, Subpart P of 20 C.F.R. Pt. 404; or (4) pursuant to the assessment of the claimant's residual functional capacity (RFC), he is unable to perform his past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(i)–(iv), 416.920(a)(4)(i)–(iv); *see also* 20 C.F.R. §§ 404.1509, 416.909; *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). "RFC is a multidimensional description of the work-related abilities a claimant retains in spite of [his] medical impairments." *Garcia v. Saul*, 509 F. Supp. 3d 1306, 1310 (D.N.M. 2020) (quoting *Ryan v. Colvin*, No. 15-cv-0740 KBM, 2016 WL 8230660, at *2 (D.N.M. Sept. 29, 2016)) (citing 20 C.F.R. § 404.1545(a)(1))

(brackets omitted). If the claimant meets "the burden of establishing a prima facie case of disability[,] . . . the burden of proof shifts to the Commissioner at step five to show that the claimant retains sufficient [RFC] to perform work in the national economy, given his age, education, and work experience." *Grogan*, 399 F.3d at 1261 (citation omitted); *see also* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

At Step One, ALJ Burdette found that Boyd "has not engaged in substantial gainful activity since February 9, 2022, the alleged onset date." (AR at 29 (citing 20 C.F.R. §§ 404.1571–76, 416.971–76).) At Step Two, the ALJ concluded that Boyd "has the following severe impairments: congestive heart failure, status/post defibrillator implant, dilated cardiomyopathy, [and] chronic back pain, status/post vagal nerve stimulator implant." (*Id.* (citing 20 C.F.R. §§ 404.1520(c), 416.920(c)).) The ALJ also found that Boyd had the nonsevere conditions of depression and anxiety and that the conditions cause Boyd mild limitations in each of the following areas of mental functioning: understanding, remembering, or applying information; concentrating, persisting, or maintaining pace; and adapting or managing himself. (*Id.* at 29–30.) At Step Three, the ALJ found that Boyd "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." (*Id.* at 31 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926).)

At Step Four, the ALJ considered the evidence of record and found:

> [Boyd] has the [RFC] to perform sedentary work as defined in 20 [C.F.R. §§] 404.1567(a) and 416.967(a) except he can never climb ropes/ladders/scaffolds, but he can frequently balance and occasionally perform all other postural maneuvers; the claimant must avoid concentrated exposure to all hazards such as unprotected heights, open machinery, and uneven terrain, etc.

(*Id.* at 31.)

Based on his review of the record and the testimony of the VE, ALJ Burdette found that Boyd is able to perform occupations such as "[t]arget count clerk[2]"; order clerk; and call out operator. (*Id*. at 37.) The ALJ ultimately determined that Boyd "has not been under a disability, as defined in the Social Security Act, from February 9, 2022, through the date of [the] decision." (*Id*. at 38 (citing 20 C.F.R. §§ 404.1520(g), 416.920(g)).)

## III. Legal Standard

The Court reviews the Commissioner's decision to determine whether the ALJ applied the correct legal standards and whether substantial evidence supports the ALJ's factual findings. *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). While a deficiency in either area is grounds for remand, *see Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161, 1166 (10th Cir. 2012), the Court may neither reweigh the evidence nor substitute its judgment for the agency's, *see Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

To decide whether the ALJ applied the correct legal standards, the Court must determine whether he adhered to "the specific rules of law that must be followed in weighing particular types of evidence in disability cases . . . ." *Lax*, 489 F.3d at 1084 (quotation marks and citation omitted). To determine whether substantial evidence supports the ALJ's factual findings, the "[C]ourt looks to [the] administrative record and asks whether it contains 'sufficien[t] evidence to support the agency's factual determinations.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation omitted). Substantial evidence "requires more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084 (citation omitted). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by

[2] This appears to be a typographical error; the vocational expert testified, and the DOT number confirms, that this occupation is that of a "charge account clerk." (*See* AR at 67.)

substantial evidence." *Id.* (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)). The Court "may not 'displace the agenc[y's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo.'" *Id.* (quoting *Zoltanski*, 372 F.3d at 1200).

## IV. Analysis

Boyd argues remand is warranted because the ALJ failed to properly evaluate the consistency of Boyd's subjective complaints in accordance with Social Security Ruling (SSR) 16-3p, resulting in a flawed RFC. (Doc. 17 at 11–15.) To evaluate a claimant's subjective symptoms, an ALJ uses the two-part framework outlined in SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017), and 20 C.F.R. § 416.929. *See Collins v. Kijakazi*, No. 1:22-cv-0949 WJ/DLM, 2023 WL 7150915, at *5 (D.N.M. Oct. 31, 2023), *R&R adopted*, 2023 WL 8281893 (D.N.M. Nov. 30, 2023). The ALJ first determines "whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce [the claimant's] symptoms . . . ." SSR 16-3p, 2017 WL 5180304, at *3; *see also* 20 C.F.R. § 416.929(b). After finding such an impairment, the ALJ must then "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit [the claimant's] ability to perform work-related activities . . . ." SSR 16-3p, 2017 WL 5180304, at *3; *see also* 20 C.F.R. § 416.929(c). Relevant factors the ALJ may consider include: (1) the claimant's daily activities; (2) "[t]he location, duration, frequency, and intensity of [the claimant's] pain or other symptoms"; (3) "[p]recipitating and aggravating factors"; (4) details about medications the claimant has taken; (5) other treatments used for symptom relief; (6) other measures the claimant employs for symptom relief; and (7) other symptom-related limitations or restrictions. *See* 20 C.F.R. § 416.929(c)(3).

Consistency findings are "peculiarly the province of the finder of fact," and courts should "not upset such determinations when supported by substantial evidence." *Cowan v. Astrue*, 552 F.3d 1182, 1190 (10th Cir. 2008) (quoting *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995)). Credibility findings must, however, "be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *McGoffin v. Barnhart*, 288 F.3d 1248, 1254 (10th Cir. 2002) (quotation and alteration omitted).

ALJ Burdette recounted Boyd's testimony regarding his symptoms, noting that he claims he has daily dizzy spells that last about 30 minutes whenever he gets up to move around or bend down. (AR at 32.) Boyd said he did not receive any treatment for dizzy spells but does take medication for his blood pressure. (*Id.*) Boyd testified that he has back pain, but that it was less intense after a nerve stimulator was implanted. (*Id.*) Boyd also "attempted physical therapy, but it stressed his heart, and his dizziness worsened." (*Id.*) The ALJ further recounted Boyd's testimony regarding his daily activities, including that he "spends his time at home resting" and that he walks to the mailbox with his wife, unless he is not feeling well. (*Id.*) The walk is about 50 yards away and takes him 20 minutes because "he becomes winded very easily." (*Id.*) Boyd said he could "'tell' if his blood pressure is not doing well and whether the slightest movement will make him feel dizzy. These sensations occur about half the week." (*Id.*)

The ALJ found that Boyd's "medically determinable impairments could reasonably be expected to cause [these] alleged symptoms," but "that [Boyd's] statements concerning the intensity, persistence, and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record. . . ." (*Id.*) In support of this finding, the ALJ relied on medical evidence regarding Boyd's cardiac symptoms, back and neck pain symptoms, and Boyd's alleged daily activities. (*Id.* at 32–35.) Boyd objects to the ALJ's analysis of the

medical evidence and daily activities related to his cardiac symptoms. (Doc. 17 at 13–14.) Boyd does not raise any arguments related to the ALJ's assessment of his back and neck pain symptoms. The Court finds no reversible error.

**A. The ALJ's Evaluation of the Medical Evidence of Boyd's Cardiac Symptoms**

In support of the ALJ's consistency finding, the ALJ summarized the medical evidence regarding Boyd's cardiac symptoms: The ALJ noted that his cardiac issues—dilated cardiomyopathy and congestive heart failure—began before Boyd's alleged disability onset date. (AR at 32 (citing AR at 1099–1100).) The ALJ highlighted that, at an appointment in April 2022, Boyd's dilated cardiomyopathy was considered stable, his blood pressure was in the recommended guidelines, he denied cardiac symptoms such as shortness of breath and chest pain, and "his previous borderline tachycardia was resolved with the initiation of medication, and he had no symptoms concerning for diastolic heart failure as evidenced by physical examination." (*Id.* at 32–33 (citing AR at 534).) The ALJ also noted that at a "follow-up" appointment, Boyd had "reported two bouts of feeling as though[] he was 'going to black out,' but this sensation resolved with rest and deep breathing." (*Id.* at 33 (citing AR at 515–20).) During this follow-up, "examination revealed nondisplaced apical impulse, normal S1 and S2, no murmurs, rubs, or gallops, and regular rate and rhythm. His heart rate was moderately elevated in the 90's despite adjustment in medication, and repeat echocardiogram was advised to monitor disease progression." (*Id.*) The ALJ considered that Boyd sought emergency treatment later in 2022 "due to syncope, chest pain, nausea/vomiting, and left upper extremity weakness." (*Id.* (citing AR at 1179–82; 1198–99).) After this, a defibrillator was implanted to address his symptoms. (*Id.* (citing AR at 1767).)

The ALJ then pointed to three appointments in which Boyd denied cardiac symptoms after his defibrillator was implanted. First, at an appointment in "early 2023," Boyd "had no

cardiomyopathy symptoms; however, the dosage of one medication was increased due to tachycardia." (*Id.* (citing AR at 499–503).) Second, "he had no complaints when seen in subsequent cardiac follow-up in 2024. (*Id.* (citing AR at 1669–71).) And third, "[i]n 2025, [Boyd] was cleared by cardiology to undergo tooth extraction." (*Id.* (citing AR at 1849–51).) The ALJ found that the medical evidence he summarized failed to support Boyd's claims:

> [While Boyd] testified that he experiences dizzy spells several times a week [ ], after his defibrillator was implanted, he denied cardiac symptoms. [ ]. During these visits, his cardiac examination was normal, and he was even cleared to undergo tooth extraction.

(*Id.* at 34 (citations omitted).)

Boyd argues that, other than dizziness, "[t]he ALJ did not address any of [Boyd's] other allegations, such as his shortness of breath and chest pain." (Doc. 17 at 13–14.) However, the ALJ addressed Boyd's cardiac symptoms, which would include shortness of breath and chest pain. To the extent the ALJ found that Boyd's complaints were inconsistent with the medical evidence, the ALJ was not required to discuss every alleged symptom separately.

The Court agrees, however, that the ALJ's findings could imply that Boyd did not report cardiac symptoms at all, including chest pain and shortness of breath, after his defibrillator was implanted in October 2022. The record would not support such a finding. As Boyd notes, the record shows that Boyd continued to report cardiac symptoms to his medical providers at multiple appointments. (Doc. 17 at 13 (citing AR at 1365 (records from October 30, 2024, appointment noting chest pain), 1370 (records from April 29, 2024, appointment noting chest pain), 1373 (Records from April 1, 2024, appointment noting chest pain and shortness of breath), 1376 (records from October 4, 2023, appointment noting chest pain), 1435 (records from April 1, 2024, noting shortness of breath), 1666 (records from October 30, 2024 appointment, noting shortness of breath

and chest pain), 1689 (records from November 13, 2024, appointment noting chest pain and shortness of breath), 1695 (records from November 6, 2024 appointment noting shortness of breath and frequent dizzy spells), 1793–94 (records from November 14, 2024 appointment noting chest pain and shortness of breath)).) Moreover, although the ALJ stated that Boyd "had no cardiomyopathy symptoms" at a March 2023 appointment, the treatment records from that visit reflect that Boyd complained of shortness of breath. (*See* AR at 33, 502.) Viewed in isolation, the ALJ's statement that Boyd denied cardiac symptoms after the defibrillator was implanted is not fully supported by the record. The ALJ cited only examinations in which no cardiac symptoms were alleged without acknowledging that Boyd had regularly mentioned his cardiac symptoms, including chest pain, shortness of breath, and dizziness, at other exams.

However, looking at the ALJ's decision as a whole, the Court finds that the ALJ's summary simply pointed out that, despite Boyd claiming he had daily dizzy spells and cardiac symptoms, there were *times* when he denied having these symptoms altogether, which was inconsistent with his testimony about their frequency. Notably, in forming his RFC, the ALJ also found that "[d]ue to bouts of dizziness, [Boyd] must avoid concentrated exposure to all hazards such as unprotected heights, open machinery, and uneven terrain, etc." (*Id.* at 35.) The ALJ further found that Boyd's exertional capacity as assessed by prior administrative medical findings needed to be reduced "due to back pain, shortness of breath, dizziness, and chest pain." (*Id.*) Viewed in this context, it does not appear that the ALJ concluded that Boyd had no cardiac symptoms at all after his defibrillator was implanted. Rather, the ALJ found that he did not consistently report those symptoms during medical appointments despite claiming at the hearing that they were a daily occurrence. *See Curless v. Berryhill*, No. 17-1198-JWB, 2018 WL 2445043, at *4 (D. Kan. May 31, 2018) ("There is no indication the ALJ ignored significantly probative evidence" but rather after considering the

evidence, the ALJ "went on to find and discuss a number of 'discrepancies [that] diminish the persuasiveness of the claimant's subjective complaints and alleged limitations.'"); *see also Wall v. Astrue*, 561 F.3d 1048, 1067 (10th Cir. 2009) ("The ALJ is not required to discuss every piece of evidence.") (further quotation omitted).

Moreover, even if the ALJ's statement amounts to a mischaracterization of the record, the Court does not find that it constitutes reversible error. The ALJ did not rely solely on the medical evidence of Boyd's cardiac symptoms to find that Boyd's allegations regarding his symptoms were "not entirely" credible. *See Wilson v. Astrue*, 602 F.3d 1136, 1145–46 (10th Cir. 2010) (affirming an ALJ's credibility determination despite finding one of the reasons given by the ALJ was unsupported by substantial evidence); *Pickup v. Colvin*, 606 F. App'x 430, 433–34 (10th Cir. 2015) (affirming an ALJ's credibility determination despite finding two of the reasons given by the ALJ were not supported by substantial evidence because the "analysis was, on balance, proper and supported by substantial evidence").

In assessing Boyd's credibility, ALJ Burdette also relied on medical evidence regarding Boyd's back pain, noting that Boyd had reported that treatments had significantly helped his back pain and that "his back pain was not corroborated by serious diagnostic pathology as radiographic studies were free of abnormalities" and that "while he initially showed some clinical deficits related to his spine, several examinations were normal." (AR at 33–34.) *See* 20 C.F.R. §§ 404.1529(c)(2) (stating consideration of objective medical evidence should be used to evaluate the intensity and persistence of symptoms); 404.1529(c)(3)(v) (stating treatments should be considered). And, as detailed below, the ALJ also relied on his assessment that Boyd's admitted daily activities were inconsistent with his alleged limitations. *See* 20 C.F.R. § 404.1529(c)(3)(i) (stating consideration of other evidence including daily activities should be used to evaluate the

intensity and persistence of symptoms). Accordingly, the Court finds no reversible error in the ALJ's credibility findings, as the ALJ's findings were, on balance, supported by substantial evidence.

**B. The ALJ's Evaluation of Boyd's Daily Activities**

Boyd also argues that the ALJ evaluated his credibility under an improper standard when the ALJ said that "[Boyd's] allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty." (Doc. 17 at 14 (quoting AR at 34).) However, this statement was made after the ALJ had evaluated Boyd's alleged daily activities and found his allegations regarding those activities not credible, so the Court finds no error.

The ALJ considered Boyd's completed questionnaire regarding his daily activities. (*Id.* at 34.) Here, Boyd "reported that he did not prepare meals or perform any household chores or yardwork." (*Id.*) While he was permitted to leave home unaccompanied, he did not drive, did not have a driver's license, did not shop, and did not go anywhere on a regular basis. (*Id.*) "He kept in touch with his mother who lived out of state" and "spent his time at home reading or watching television." (*Id.*) The ALJ also considered the questionnaire completed by Boyd's girlfriend, including that she said that "she sometimes assisted with some personal care needs such as removing his shirt and shaving his head"; that she "prepared meals," but Boyd was "able to prepare a sandwich or a bowl of cereal"; and that "[s]he felt it was her job as mother and girlfriend to perform all cleaning." (*Id.*) Finally, the ALJ considered that at a consultative psychological examination in early 2024, Boyd reported cooking, cleaning, using a computer, washing dishes, and shopping. Only after considering all of this evidence did the ALJ make his finding:

> Although the claimant has alleged daily activities that are fairly limited, two factors weigh against considering these allegations to be strong evidence in favor of the finding the claimant disabled. First, allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty. Second, even if the

> claimant's daily activities are truly as limited as alleged, it is difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons, particularly in view of the relatively weak medical evidence and other factors discussed in this decision. Overall, the claimant's reported limited daily activities are considered to be outweighed by other factors herein discussed.

(*Id.*)

Put in context, the Court finds that the ALJ was not stating a legal standard to evaluate Boyd's credibility but was instead making a "common sense" observation that, because Boyd and his girlfriend had given different accounts of his daily activities over time, as well as alternative reasons that Boyd did not clean, his account was not fully credible. *See Keyes-Zachary*, 695 F.3d at 1168 (finding reversal inappropriate where ALJ included an identical statement because "the ALJ merely considered the lack of objective verification as a *factor* in assessing the value of [the claimant's] hearing testimony concerning her limited daily activities") (citing *Wall*, 561 F.3d at 1069–70 (finding identical language was "merely a common sense observation that the ALJ would not treat Claimant's testimony as 'strong evidence' of her disability due to his prior determination that Claimant's testimony was not 'fully credible.'")); *see also Aguilar v. Berryhill*, No. 15-cv-896-SMV, 2017 WL 1380643, at *3–4 (D.N.M. Mar. 31, 2017) (finding that the ALJ gave valid reasons for discounting the claimant's subjective complaints where the ALJ relied, in part, on the claimant providing inconsistent information about his treatment and activities). Accordingly, the Court does not find that the ALJ erred when he gave Boyd's alleged daily activities little weight.

## V. Conclusion

The Court finds that Boyd has identified no reversible errors in the ALJ's evaluation of the consistency of Boyd's subjective complaints.

**IT IS HEREBY ORDERED** that Boyd's Motion to Reverse or Remand to Administrative Agency Decision, with Memorandum in Support (Doc. 17) is **DENIED**.

**IT IS SO ORDERED**.

DAMIAN L. MARTINEZ
UNITED STATES MAGISTRATE JUDGE
*PRESIDING BY CONSENT*